| 4 | 283 |
|143| 403 |

REED and Others, *v.* COALE and Another, Administrators.

In a suit upon a note executed by *A.* to *B.* a note made by *B.* and *C.* to *A.* was set up as a defence by way of set-off, without any allegation applying the latter note to the transaction upon which the former was founded.   *Held,* that it was not a proper set-off.

In a suit for foreclosure by the assignee of a mortgage, against *A.,* for the non-payment of his note given to *B.* and secured by the mortgage, *A.* set up in his answer that before notice of the assignment he sold certain specified goods to *B.* and *C.* to whom the note actually belonged, although drawn in favor of *B.,* and that by an agreement with *B.* and *C.,* and

particularly with the consent and acquiescence of *B.*, the goods were accepted for and on account of said note. *Held,* that the defence alleged was sufficient.

A mortgage not acknowledged or proved, cannot, under the R. S. 1843, be properly admitted to record.

The recording of an instrument operates as constructive notice of its contents only in those cases where the recording is authorized by law.

The R. S. 1843 do not authorize the recording of the assignment of a mortgage.

The surrender of a note to the maker is a good consideration, to the extent of the amount due on it, for a new note given in its stead.

The new note is a new contract, to be regarded as if given for any other valid consideration, and to be governed in all respects by the law in force at the date of its execution.

Section 29, c. 31, R. S. 1843, is retrospective, and revives contracts which were, by the previous act, void for usury.

But the payee of a usurious note, under the law of 1843 can only recover the principal, without interest, and if any interest has been paid, it is deducted from the principal, and judgment rendered for the residue; and the defendant recovers his costs.

To constitute usury, two things are necessary: 1. A loan, and 2. The taking of more interest than the law allows; and where these facts are shown to exist, the law pronounces the intent to have been corrupt.

In a civil case, evidence is not admissible to show that the party contracting for usurious interest had no corrupt purpose in taking it.

*Wednesday,
June 15.*

ERROR to the *Wayne* Circuit Court.

Roache, J.—This was a bill in chancery for the foreclosure of a mortgage, brought by the defendants in error against *Irvin Reed* and others, heirs of *Edmund Evans,* deceased. The Circuit Court rendered a decree in favor of the complainants for the sum of 1,450 dollars, and, in default of payment, ordered a sale of the mortgaged premises.

The facts alleged in the bill are substantially these:

In 1836 or 1837, *Samuel Coale* lent to *Edmund Evans* 1,000 dollars, and a note was executed, payable in one year, with interest at the rate of 10 per cent. The interest was regularly paid up to *February* 29th, 1842, and indorsed on the note. On the 20th day of *October*, 1842, the note was surrendered and a new one under seal executed, of the precise tenor of the original, excepting the date, which was correctly stated. The reason assigned for making the new note is, that the original was covered

with indorsements, and that they were advised and be-
lieved that it would be lawful, and that, under the cir-
cumstances, the change would not in any way affect the
rights of the parties or change the nature of the debt.
The interest was regularly paid on the new note for four
and a half years, amounting to 450 dollars.

On the 12th day of *March*, 1842, *Irvin Reed*, the hus-
band of *Mary*, a daughter of *Edmund Evans*, deceased,
executed two instruments, in the form of title-bonds, with
conditions of defeasance, for the purpose of securing the
payment of two promissory notes, of 1,000 dollars each,
payable *March* 12th, 1843, to the said *Edmund Evans*, on
lot No. 97, in the city of *Richmond*.

On the 20th day of *October*, 1842, *Evans* assigned one
of these "mortgages" to *Coale*, as collateral security
upon his note, setting out in the assignment that as the
said *Evans* held another mortgage on *Reed*, of the same
date and amount, which was not transferred, "the within
mortgage should have priority of satisfaction out of the
property on which both of said mortgages are, they both
being on the same property." This assignment was ac-
knowledged by *Evans*, and the instrument and assignment
were recorded *November* 2d, 1842.

*Edmund Evans* died intestate *March* 1st, 1846, leaving
the plaintiffs in error his heirs at law.

None of the defendants answered except *Reed*.

*Reed*, in his answer, admits generally the material alle-
gations in the bill, except that he denies all notice of the
assignment of the mortgage by *Evans* to *Coale*, until after
the death of the latter. He insists that the recording of
the assignment of the mortgage did not operate *as notice*
to him, not being authorized by the statute.

He further alleges that the note for 1,000 dollars, given
by *Evans* to *Coale*, was usurious, and claims that the sev-
eral sums paid and credited on the note as interest, shall
be applied as a credit on the principal.

He also claims to be entitled to a set-off against the
whole amount of the note. He alleges that the note was
given in consideration of a sale of goods made to him by

the said *Edmund Evans* and *John Evans*, who were, at the time, partners, trading under the name of *E. Evans & Son*, and that it was consequently, although only in the name of *E. Evans*, the property of the firm. He then sets up several items of set-off against the notes:

1. Three several promissory notes, given by *E. Evans & Son* to him, all of dates subsequent to the date of the note in controversy, and amounting together to over 1,300 dollars; but there is no further allegation in any way connecting said notes with the transaction between *Reed* and *E. Evans*. 2. A bill of goods, wares and merchandise, amounting to 2,450 dollars, which he alleges were sold by him to *E. Evans & Son*, in 1844, " and which were accepted by them, by the consent and acquiescence of said *Edmund Evans*, on account of said two agreements, (one of which is the 'mortgage' sued on) specified in said bill, and were to be accounted for by said *Edmund Evans* in settlement on account of said agreements."

The complainant excepted to all that portion of the answer alleging a set-off. The Court sustained the exception as to the item of goods sold, and reserved their decision as to the item of promissory notes, until final decree.

The Court, on the hearing, rendered a decree for the full amount of the note, with 10 per cent. interest, disallowing the promissory notes as an offset.

The three notes embraced in the first item, were not proper subjects of set-off. They were payable to *E. Evans & Son*, and not to *E. Evans* alone, and therefore wanted the essential quality of mutuality, and there are no allegations in any way applying them to the notes of *Reed* to *E. Evans*.

We are of opinion that the Court erred in sustaining the exception as to the item of goods sold. The allegations as to that item are, substantially, that before notice of the assignment he sold the goods to *E. Evans & Son*, to whom the note actually belonged, although drawn in favor of *E. Evans* alone; and that, by an agreement with both the partners, and particularly with the consent and

acquiescence of *E. Evans,* the payee, the goods, &c., were accepted for and on account of said notes.

There can be no doubt but that these facts would have constituted a valid set-off in a suit by *E. Evans* on the note. If good as against *Evans,* it is equally good against his assignee, if made before notice of the assignment. The complainant contends that the recording of the assignment operated as a constructive notice to *Reed,* and insists that inasmuch as the answer admits that it was so recorded sometime previous to the date of the set-off, he cannot, in the same answer, be permitted to dispute its legal effect.

The mortgage was not acknowledged, nor proved, and could not, therefore, under the statute, be properly admitted to record. Indeed, it is wholly immaterial, so far as this point is concerned, whether it was recorded or not. It was binding on *Reed* without recording. But the transfer of the mortgage was the fact with notice of which *Reed* is sought to be charged. There was no law authorizing the recording of assignments. The recording of an instrument operates as constructive notice of its contents only in those cases where such recording is authorized by law.

We are of opinion, therefore, that the record of the assignment was not notice to *Reed,* and that it was, consequently, competent for him to set up the second item as an offset. The exception to that portion of the answer should have been overruled.

It remains to consider the question of usury.

The law in force at the date of the original note, permitted the taking of 10 per cent. That law was repealed by the act of 1842, (General Laws 1842, p. 91, s. 8,) which was in force for several months before the new note was executed. The surrender of the original note was a good consideration, to the extent of the amount due on it, for the new note. But the new note was a new contract, and is to be regarded as if given for any other valid consideration, as the sale of goods or the like. It was to be governed, in all respects, by the law in force at the date of its execution. By that law it was usurious and void. But

the case is embraced by the provisions of the act of 1843, (R. S. 1843, p. 581, s. 29,) which is retrospective in its operation, and revives contracts which were, by the previous act, void. See *Andrews* v. *Russell*, 7 Blackf. 474. The payee of the usurious note, under this law, can only recover the principal, without interest; and if any interest shall have been paid, it shall be deducted from the principal, and judgment rendered for the residue; and the defendant recovers his costs.

The counsel of the appellees insists that inasmuch as the evidence shows that the taking of the new note was in good faith, and was, as the parties supposed, merely a continuation of a pre-existing valid contract, it is not subject to the taint and penalty of usury. In other words, that although the presumption of usury arises wherever the taking of unlawful interest is shown, yet that presumption may be rebutted by proving the party to have had no corrupt purpose in taking it. In this he is mistaken.

Two things are necessary to constitute usury. 1. A loan, 2. The taking of more interest than the law allows. *Scott* v. *Lloyd*, 9 Peters 418. Wherever these two facts are shown to exist, the law pronounces the intent with which they were done to be corrupt. Parties frequently seek to evade the statute by various devices, as by pretended sales, and the like. In such cases it becomes material to inquire what was the real character of the transaction. If it be ascertained that the party intended, by the pretence used, to take more than the legal rate of interest, that intent is declared corrupt. It is a presumption of law, which cannot be rebutted by any proof of honest intentions. A man might as well be allowed to show that he had violated any other positive statute with a good design. In a criminal prosecution such proof might have weight in mitigating the punishment; but in a civil case, where it is sought to be used to affect the rights of the other party, accruing under a positive statute, it is wholly inadmissible.

The statute governing this case expressly prohibited

the taking of more than 6 per cent. interest. The note was made since the enactment of that statute, which the party is presumed to have been aware of. It follows then that the party contracted to take illegal interest, intending, as the law presumes, in so doing, to violate the statute. The consequences of his acts are fixed by the statute.

*Per Curiam.*—The decree is reversed back to the order of the Court sustaining the second exception of the complainant to the answer of the defendant *Reed*, with costs. Cause remanded for further proceedings in accordance with this opinion.

*J. S. Newman*, for the plaintiffs.

*J. Perry*, for the defendants.