[S. F. No. 6107. Department Two.—December 1, 1913.]

PARKSIDE REALTY COMPANY (a Corporation), Appellant, v. L. D. MacDONALD, Defendant and Respondent; CATHERINE BLACK et al., Defendants and Appellants.

VENDOR AND VENDEE—MODIFICATION OF CONTRACT BY EXTENDING TIME.—Where a vendor of real property, finding himself unable to make title within the time stipulated in the contract of conveyance, executes another agreement merely extending the time of performance of the previous contract, the subsequent agreement is not a novation or a new contract, but simply a modification of the terms of the original one.

ID.—NOVATION—INTENTION OF PARTIES.—In such cases the question of novation is always one of intention.

ID.—NOTICE OF CONTRACT—SUBSEQUENT PURCHASERS.—Subsequent purchasers, who read such contracts in the office of the county recorder, are chargeable with notice of them, whether or not they are such documents as might properly be recorded.

ID.—INSTRUMENT NOT ENTITLED TO REGISTRATION—RECORD AS NOTICE.—An instrument, not entitled to go upon record, is not constructive notice although recorded; but such an instrument may impart actual notice to one who sees it of record.

ID.—TENDER BY VENDEE—ADMISSION IN PLEADINGS.—Where the cross-complaint in a suit by a vendor of land to quiet title alleges a tender by the vendee of the balance of the purchase price and a demand for a conveyance, and the fact of tender is not denied by the pleadings but is admitted by stipulation, the sufficiency as a tender of a letter, written by the vendee, need not be considered.

ID.—TENDER BY VENDEE TO GRANTEES OF VENDOR.—A vendee, under a contract to purchase real property, is not required to tender the purchase money to the vendor's grantees, although he knows that deeds have been delivered to them; there is no privity of contract between him and them.

ID.—SUFFICIENCY OF TENDER—QUESTION RAISED FOR FIRST TIME ON APPEAL.—An objection that the vendee's offer to perform was not made with sufficient detail cannot be raised for the first time on appeal.

ID.—LACHES—RAISING QUESTION FOR FIRST TIME ON APPEAL.—While it is true that the defense of laches need not be pleaded, and that the court may in a proper case deny relief *sua sponte* to a seeker for relief in equity who has been guilty of laches, it is also true

that, where the court's attention has not been in some manner drawn to the subject, the appellant may not first seek for relief on appeal.

ID.—REMEDY OF VENDEE—WHEN NOT BARRED BY LACHES.—The vendee in this case under a contract to purchase real property was not guilty of laches barring his right to affirmative relief in an action against him by the vendor.

ID.—SATISFACTORY TITLE—AGREEMENT OF VENDOR TO MAKE.—Where a vendor agrees to make title satisfactory to the vendee and his attorneys, the question is not whether the title is in fact a good or marketable one, but whether it is acceptable to the vendee and his attorneys.

JUDGMENT—SETTING ASIDE WITHIN YEAR.—A person served by publication may come in at any time within a year and have the judgment set aside.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new tr' 'l.  J. J. Trabucco, Judge presiding.

The facts are stated in the opinion of the court.

J. J. West, Morrison, Dunne & Brobeck, W. T. Kearney, Geo. A. Dougherty, and W. W. Sanderson, for Appellants.

U. S. Webb, and W. H. Cobb, for Respondents.

MELVIN, J.—The plaintiff and all of the defendants except the successful cross-complainant L. D. MacDonald appeal from the judgment and from an order denying their motion for a new trial.

In March, 1906, the plaintiff commenced an action against MacDonald to quiet its alleged title to thirty-three lots in outside land, block 1158, situate in the city and county of San Francisco.  Defendant MacDonald demurred and the records of the case having been destroyed by fire, an amended complaint was filed, pursuant to stipulation of the parties on the last day of October, 1906.  To this complaint MacDonald filed an answer and later a cross-complaint, wherein he made the plaintiff and all of the other appellants now appearing here, defendants.  In his cross-complaint he alleged that he had purchased the thirty-three lots from E. J. Lynch under a contract of sale; that he had offered to carry out the said contract but had been prevented from doing so by Lynch; that

he was and always had been ready, able, and willing, since the balance of the purchase price under the contract had been due, to pay the same and receive a conveyance of the property; and that the plaintiff, Parkside Realty Company, and all of the other defendants to his cross-complaint had taken their deeds to the property with full knowledge of and subject to his rights. All of the interested parties answered the cross-complaint, and upon the issues joined a trial was had with the result that the court found the said MacDonald to be the owner of said property, entitled, upon depositing with the clerk of the court the balance due under the contract, to a conveyance thereof from all of the appellants.

The original contract between MacDonald and Lynch was made June 9, 1904. By it MacDonald bought from Lynch the property in question for two thousand six hundred dollars, paying one hundred dollars at the time and agreeing to pay the balance on or before July 9, 1904, should the title prove satisfactory. MacDonald was to have thirty days for the examination of the title, and in case it should prove unsatisfactory Lynch was to have thirty days to clear it. Time was of the essence of the contract, and the one hundred dollars paid thereon was to be forfeited in case of default in payment of the balance due after the title should be perfected. Within the thirty days allowed under the contract MacDonald found the title to be defective. Lynch realizing that it would be impossible to overcome the objection to the title within thirty days entered into another agreement, before the termination of the original contract. In pursuance of this agreement MacDonald paid to Lynch the further sum of five hundred dollars on account of the purchase price and upon the perfection of the record title to said property and notice thereof to him he was to pay the balance of two thousand dollars. Lynch agreed to perfect the title within a reasonable time, say ninety days, and to make the title satisfactory to MacDonald and his attorneys, Messrs. Jordan, Treat & Brann, and to convey the property unencumbered upon payment of the balance of two thousand dollars.

By the writing of July 14, 1904, the obligation of Lynch to convey was to terminate if MacDonald should fail to make the final payment. Time was not made of the essence of the latter agreement, and there was no provision therein for the

forfeiture of the part payments in case of default by the purchaser. Lynch employed MacDonald's attorneys, Messrs. Jordan, Treat & Brann, who brought suit against several persons for the purpose of correcting the defect in the title. The summons was served upon one of the defendants, Rodman, by publication. Judgment was entered on December 20, 1904. Lynch notified MacDonald of the successful outcome of the suit and demanded the balance of the purchase money, but the title was not then perfected to the satisfaction either of MacDonald or of his attorneys, the latter advising him that no perfect title would exist until one year from the entry of the judgment. MacDonald refused to pay, but the court found that his refusal did not cancel the contract of sale. The rest of the transaction may be described by quoting certain findings of the court:

"That on the 15th day of March, 1906, said L. D. Mac-Donald was notified by Jordan, Treat & Brann, the attorneys for E. J. Lynch in the suit to quiet title above referred to, that the judgment rendered therein had become final and conclusive, and that the title to said property was satisfactory to them, and that it would then be safe for him to pay the balance of the purchase price of said property.

"That this was the first and only notice given to MacDonald of the perfection of said title, after the judgment to quiet title became final, and the first and only notice that the title was satisfactory to Jordan, Treat & Brann.

"That immediately after receiving such notice, to wit, on March 15, 1906, said L. D. MacDonald tendered to said E. J. Lynch the balance of the purchase price of said property, to wit, two thousand dollars, and demanded of said Lynch a conveyance to himself of said property, but said Lynch refused to accept the balance of said purchase price, and refused, and still refuses, to carry out his said contract with said Mac-Donald, and refused, and still refuses, to convey said property to said MacDonald, and such conveyance has not been made."

The court further found that on June 15, 1905, the contract of June 9, 1904, and the agreement of July 14, 1904, were acknowledged by MacDonald and recorded. The court also found that E. J. Lynch never tendered a deed of the property to said L. D. MacDonald or notified him of the cancellation of his contract.

The various conveyances by which the other appellants acquired their alleged interests were made after June, 1905, and it was found that all of these grantees had knowledge of MacDonald's contract before purchasing.

The case of *Collischon* v. *MacDonald* was tried with this one, and the same judgment was made applicable to both causes.

Appellants contend that the contract of June 9, 1904, was rescinded by that of July 14th, and that as the latter, signed only by Lynch, was not entitled to be recorded there was no notice to the subsequent purchasers. But the agreement of July 14th was not a novation. By the contract of June 9th Lynch agreed to sell and MacDonald to buy. In the later agreement there was no contract of purchase and sale, but merely a modification of the terms. Furthermore, these terms were modified by Lynch alone for his own benefit. In such cases the question of novation is always one of intention. The rule is well expressed in 29 Cyc. 1134, as follows: ''The question is always one of intention, and a mere change in the amount of the debt, the terms and mode of payment, the rate of interest, or the nature of the securities does not effect a novation, unless the intention of the parties to novate the obligation is clearly shown.'' The agreement with reference to the extension of time was not a novation or a new contract. (*Oakland Paving Co.* v. *Barstow,* 79 Cal. 47, [21 Pac. 544].) The contract of June 9th was acknowledged by MacDonald and the agreement of July 14th was not acknowledged at all. It does not clearly appear whether or not Lynch acknowledged the first writing. Much learning is expended by counsel in an effort to determine whether or not the vendee had a right to record these writings. The fact remains that they were attached together physically and were recorded. The stipulation of facts contains the following statement: ''The plaintiff and the defendants in said action, other than L. D. MacDonald, prior to purchasing their respective interests in the property described in the pleadings therein, searched the records in the recorder's office of the city and county of San Francisco, state of California, and there found and read the contracts between L. D. MacDonald and E. J. Lynch, dated respectively June 9th, 1904, and July 14th, 1904, and recorded

June 15th, 1905, in liber 50 of covenants at page 314. That other than above said parties had no additional notice of said contracts except the constructive notice from the recordation of said contracts.''

Under the circumstances it makes no difference whether the writings were in a technical sense such as might properly be recorded. The reading of the instruments was *actual* notice to the intending purchasers, whether the documents were lawfully of record or not. The supreme court of Indiana has correctly dealt with a similar problem as follows:

''We agree with appellee's counsel that an instrument, not entitled to go upon record, is not constructive notice, although recorded. (*Reeves* v. *Hayes,* 95 Ind. 521, 531; *Watkins* v. *Brunt,* 53 Ind. 208; *Taylor* v. *City of Fort Wayne,* 47 Ind. 274; *Kennedy* v. *Shaw,* 38 Ind. 474; *Lockwood* v. *Slevin,* 26 Ind. 124; *Deming* v. *State,* 23 Ind. 416; *Reed* v. *Coale,* 4 Ind. 283.)

''But we do not agree that such an instrument may not impart actual notice to one who has seen it of record, for the law is that if the purchaser does actually see the instrument of record, it constitutes notice. (*Musick* v. *Barney,* 49 Mo. 458; *Hastings* v. *Cutler,* 24 N. H. 481; *Gilbert* v. *Jess,* 31 Wis. 110; *Musgrove* v. *Bonser,* 5 Or. 313, [20 Am. Rep. 737].) It is difficult to imagine any reason why this should not be the law, since it is immaterial where the purchaser sees the instrument, whether on the record or elsewhere.'' (*Walter* v. *Hartwig,* 106 Ind. 123, 128, [6 N. E. 5].)

The next contention of appellants is that the purported tender made by MacDonald was not sufficient. All of the evidence on the subject is contained in the following stipulation:

''Said MacDonald tendered said $2,000.00 by letter received by said Lynch in regular course of mail, and said letter is in words and figures following:

''March 15, 1906.

''To S. M. SNYDER and
        ''EDWARD J. LYNCH.

''The undersigned hereby tenders and offers to pay you $2000.00 on account of purchase of 33 lots in block 1158 outside lands in the city and county of San Francisco, state of California, as per contract of purchase dated June 9th, 1904,

and July 14th, 1904.  The undersigned hereby demands a deed to said property.

"Yours &c.,

"L. D. MACDONALD."

Appellants cite with much emphasis the case of *Doak* v. *Bruson,* 152 Cal. 21, [91 Pac. 1001], as authority for their belief that no sufficient tender is shown.  Perhaps if there had been merely an allegation of a tender and a denial thereof, a showing of the sending of the letter and its receipt would not amount to sufficient proof of such tender.  But in Mac-Donald's answer to plaintiff's complaint and in his cross-complaint he avers that immediately upon notice from Jordan, Treat & Brann that the title was perfected he tendered to Lynch the balance of the purchase price and demanded a conveyance.  Appellants in their answer aver that "no such offer or demand was made by said MacDonald until about the 15th day of March, 1906."  In the stipulation of facts quoted above is the statement that MacDonald *"tendered"* the money by letter.  The fact of a tender having not been denied by the pleadings and having been admitted by stipulation, the sufficiency of the letter in and of itself need not be considered.

There was no compulsion upon MacDonald to tender any of the money to Lynch's grantees, although he knew that deeds had been delivered to them.  There was no privity of contract between him and them.  The fact that Lynch had transferred the land to third parties was not in and of itself an abandonment of the contract with MacDonald.  (*Shively* v. *Semi-Tropic Land & Water Co.,* 99 Cal. 261, [33 Pac. 848] ; *Garberino* v. *Roberts,* 109 Cal. 128, [41 Pac. 857].)  It was necessary for him to make a tender to Lynch in order to put the latter in default.

Appellants make the objection that the offer to perform was not made with sufficient detail.  There was no demurrer to the cross-complaint.  The objection may not be taken here for the first time.  (*Duff* v. *Fisher,* 15 Cal. 381.)

Appellants invoke the doctrine of laches.  They call attention to the following facts: The decree quieting title was entered December 20, 1904, and within thirty days MacDonald was notified of that judgment.  In March, 1906, he was told by Messrs. Jordan, Treat & Brann that they were satisfied with the title.  On March 15, 1906, he offered by letter to pay

the balance of the purchase price. He was sued by Lynch on March 29, 1906, and answered the amended complaint (filed in October of that year), in November. But he did not seek affirmative relief by cross-complaint until November, 1907. Respondent makes two answers to this contention: 1. That the question of laches, while not one which need be raised by pleading, is nevertheless a subject which may not be brought to the court's notice for the first time on appeal, and the record does not show that the subject was called to the attention of or considered by the lower court (citing *Larkin* v. *Mullen,* 128 Cal. 454, [60 Pac. 1091]) ; and, 2. That he was acting within his rights with due diligence and was not guilty of laches. Both positions are well taken. While it is true that the defense of laches need not be pleaded and that the court may in a proper case deny aid *sua sponte* to a seeker for relief in equity who has been guilty of laches (*Stevinson* v. *San Joaquin etc. Co.,* 162 Cal. 143, [121 Pac. 398]), it is also true that where the court's attention has not been in some manner drawn to the subject the appellant may not first seek for relief on appeal. But even if this point be waived, we do not find that respondent was guilty of laches. After the judgment quieting Lynch's title, MacDonald relied upon the advice of his attorneys to the effect that the said judgment might be assailed successfully by Rodman within one year. His act of recording the contract was an evidence that he intended to assert his rights to the property if any he had. Lynch had not tendered him a deed and demanded payment nor offered to repay either of the installments and to rescind the contract. His answer to the complaint fully sets forth his claims of interest and his continued willingness to pay the balance of the purchase price of the property. The *lis pendens* was notice to everybody that he stood upon the terms of his contract. There was nothing in his conduct indicating an intent to waive his rights. Nor does it appear that his neglect sooner to become the aggressor and to demand specific performance caused any one to be prejudiced. Under the circumstances he was not guilty of such laches as would bar recovery. (*Ex-Mission L. & W. Co.* v. *Flash,* 97 Cal. 632, [32 Pac. 600] ; *Furman* v. *Craine,* 18 Cal. App. 47, [121 Pac. 1007].)

Appellants insist that the judgment against Rodman and others gave Lynch a marketable title and that he was bound to accept it in spite of the advice of his attorneys. But the court found upon proper evidence that Lynch agreed to make the title satisfactory to MacDonald and his attorneys, Messrs. Jordan, Treat & Brann. Therefore the question was not whether the title was in fact a good or marketable one, but whether it was acceptable to the respondent and his attorneys. (*Allen* v. *Pockwitz,* 103 Cal. 88, [42 Am. St. Rep. 99, 36 Pac. 1039]; *Church* v. *Shanklin,* 95 Cal. 627, [17 L. R. A. 207, 30 Pac. 789].)

We cannot say that Mr. Brann's advice to his firm's client was without justification. On the contrary it was that of a careful lawyer. It was to the effect that a person served by publication may come in at any time within a year and have the judgment set aside. To justify such advice we need only cite section 473 of the Code of Civil Procedure.

The judgment and order are affirmed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.